MARY E. FERGUSON v. SAMUEL C. WRIGHT et al.

*Execution Sale Without Allotting Homestead—Residence—Evidence—Color of Title—Adverse Possession—Ouster—Tenants in Common.*

1. A sale of land under execution on a judgment rendered against a resi-. dent of this State on a debt contracted since 1868 is void as to the defendant in the exection, unless a homestead was allotted him then, or unless he had a homestead already allotted in other lands.

2. Hearsay testimony as to the residence of a person is inadmissible.

3. Where it is shown that a person was once a resident of this State, the presumption is that he continues to be so, and the burden of proving a change of domicile is upon him who relies upon such change.

4. A void deed by a Sheriff is not color of title.

5. Where an occupant of land has entered and holds under title derived mediately or immediately through conveyances from a portion of the tenants in common. to whom the land had passed by descent or purchase, although professing to convey the whole interest in the land, a possession for less than twenty years will not raise the presumption that the co-tenant who did not join in the deed has been evicted, for one tenant in common cannot thus make the possession adverse to his co-tenant.

6. Registration of a deed does not have the effect of an ouster.

This was an action by the plaintiff against the defendants to be let into possession as owner of one-eighth interest of a certain tract of land in Cherokee County, tried before *Graves, J.*, and a jury, at Spring Term, 1893, of CHEROKEE Superior Court.

Robert Ferguson died intestate in the year 185_, leaving surviving him children and heirs at law—Samuel C. Ferguson, George Ferguson and others—to whom the land descended. There was evidence tending to show that Samuel C. Ferguson died in August, 1870. There was evidence tending to show that S. C. Ferguson was married, and that plaintiff was his only child. Upon issues submitted to and found by the jury, to which there were no exceptions taken, either

to the evidence or the charge of the Court, the jury found that Samuel C. Ferguson and Jennie Morgan were married in 1865, and the plaintiff is the only issue of said marriage, and she was born in 1866. There was evidence tending to show that Samuel C. Ferguson and the said Jennie separated in 1866, the said Jennie returning to her parents, where she has since resided; and there was evidence tending to show that, after the said Jennie went to her mother's, S. C. Ferguson went there to see her at times.

The defendants offered and read in evidence a deed from the Sheriff of Cherokee County, one C. C. Vest, conveying to M. C. King said Samuel C. Ferguson's interest in the land, dated the 4th day of October, 1869, and registered in Cherokee County __ day of December, 1869, and execution issuing from the Superior Court of Cherokee County on a judgment in favor of F. P. Axley against said Samuel C. Ferguson. The judgment was taken on the 11th day of August, 1869, before a Justice of the Peace, and docketed in the Superior Court on the 14th day of August, 1869, and it appeared from the record that the summons was served personally in Cherokee on Samuel C. Ferguson on that day. There was evidence tending to show that on the 25th day of April, 1870, the said King sold and conveyed the interest of Samuel C. Ferguson, which he acquired by the Sheriff's deed, to Thomas M. Ferguson. Said deed was registered in April, 1870. King testified that he bought the land for the benefit of S. C. Ferguson, and conveyed to his brother with that understanding. There was evidence tending to show that Thomas M. Ferguson and the heirs at law, other than Samuel C. Ferguson, of Robert Ferguson, on the 14th day of May, 1870, sold and conveyed the entire tract of land to M. L. Brittain, who immediately took sole possession under their deed, which was duly registered on the 17th day of May, 1870, and the said M. L. Brittain and the defendants claiming under him have been in the sole possession of said tract of land con-

tinuously up to this time. There was no evidence that plaintiff or his brothers had made any demand to be let in, or that there was any actual denial of plaintiff's right, except such as arose from defendants' claim and occupation. The defendants offered evidence tending to show that Samuel C. Ferguson was a non-resident of the State at the time of the execution sale, and there was evidence tending to show that he was a resident.

Witnesses for the defendants testified that Samuel C. Ferguson was raised on the lands in controversy, and made it his home until 1866, at which time he went off, and from that time until his death the witnesses did not know, of their own knowledge, the place of his residence, during which year he and his wife separated, the latter returning to the home of her parents and being visited occasionally by her husband; that shortly thereafter Samuel went away, and witnesses had not seen him since, but that it was generally understood in the neighborhood that he died in the State of Georgia.

The defendants proposed to prove by these witnesses that it was generally reputed in the neighborhood that said Samuel was not a resident of this State, but was residing in the State of Georgia, and continued to reside there from 1866 to the day of his death. This was objected to by the plaintiff and excluded by the Court, and defendants excepted.

The defendants asked the Court to charge the jury, among other charges given, that the Sheriff's deed to M. C. King is color of title, and, although M. C. King did not go upon the land, if the Sheriff's deed was registered in December, 1869, the registration of said deed was notice of the claim of King, and if King conveyed to T. M. Ferguson on the 25th day of April, 1870, and said T. M. Ferguson conveyed to M. L. Brittain on the 4th day of May, 1870, and Brittain went into possession of the land under said deed, and he and those claiming under him have been in the open, notorious possession

of said land for more than seven years before the commencement of this action, claiming the whole estate therein, the plaintiff is not the owner. This was refused by the Court, and defendants excepted.

In response to this prayer the Court said if the deed is valid it was sufficient to pass and did pass the title to the purchaser, but if it was void it was not color of title.

The defendants asked the Court to further charge that if M. L. Brittain entered into the open adverse possession of the land, claiming the same under the deed of the Sheriff to King, and from King to T. M. Ferguson, and from T. M. Ferguson to him, the statute began to run at the time of his taking possession, and the death of Samuel C. Ferguson would not stop the statute from running. This was refused by the Court, and defendants excepted.

His Honor charged the jury that if Samuel C. Ferguson was a non-resident of the State at the time of the execution sale said Ferguson was not entitled to a homestead, but that the residence was a matter for the jury to determine from the testimony of witnesses, speaking of their own knowledge, that Samuel C. Ferguson was not a resident of the State, or, speaking of their own knowledge, that he was a resident of another State or place outside of this State; that the jury should take into consideration all the facts and circumstances fixing his place of residence at the time of the execution sale; they cannot take into consideration mere hearsay or common reputation.

That Samuel C. Ferguson's residence was admitted to be in this State in 1866, and the law presumed that his residence continued to be in this State, unless such presumption has been rebutted. His Honor further instructed the jury that, if there was an actual ouster in the life-time of Samuel C. Ferguson in May, 1870, and said Ferguson died in August, 1870, the statute would begin to run from the time of actual ouster, and the death of said Ferguson would not stop the

running of the statute, but in this case there was no evidence of an actual ouster.

That if Samuel C. Ferguson was a son of Robert Ferguson, on his death Samuel became a tenant in common with his brothers and sisters, and if they sold their interest such sale was not an ouster, and the possession of the purchasers would not be an ouster unless held exclusively for twenty years.

If Thomas Ferguson and others joined in the deed conveying their interest to Brittain, Brittain had a good title to that much of the land, and his entering upon the land was rightful and his possession was not necessarily adverse to the plaintiff's rights. Neither the plaintiff nor Samuel Ferguson could have brought an action against him to turn him out of the possession. Possession under color of title, in order to ripen into title must be adverse so as to expose him to an action of the plaintiff's ancestor; until there was an actual ouster, or a presumed ouster, which occurs after twenty years, the statute does not begin to run.

That as the sale was made in 1869, and the statute did not begin to run until January, 1870, and the suit was brought in 1889, there was no presumption of an ouster, and as the Sheriff's deed to King was a sale of the interest of one tenant in common, and that interest was conveyed by King to another tenant in common, who, in a joint deed with the remaining tenants in common, conveyed to Brittain, although he and they conveyed the entire estate, Brittain's possession under such deed was not adverse to the plaintiff's ancestor, and Brittain and those claiming under him could not avail themselves of the seven years statute.

His Honor instructed the jury that if Samuel Ferguson and the mother of the plaintiff were married, and the plaintiff was born in lawful wedlock, she would be the owner of a one-eighth interest in the land and entitled to be let into the possession, unless the Sheriff's deed conveyed the title of Samual C. Ferguson. "If Samuel C. Ferguson was a resi-

dent of the State at the time of the Sheriff's sale, and no homestead was allotted and set apart to. him, the sale was void, and the Sheriff's deed conveyed no title to King. If Samuel C. Ferguson was not a citizen of the State at the time of the Sheriff's sale, although no homestead had been allotted to him, his interest in the land passed, and the plaintiff, being his heir, cannot recover."

1. The defendants assign error in the charge given, in that there was error in confining the jury in their deliberations upon the question of the residence of the said Samuel C. Ferguson to the testimony of the witnesses detailed to be within their own knowledge.

2. That the Court erred in instructing the jury that the defendants' possession under the Sheriff's deed was not adverse. to Samuel C. Ferguson. That the Court erred in instructing the jury that the defendants were not entitled to the benefit of the seven years exclusive adverse possession under the Sheriff's deed.

3. For refusal to give the special instructions prayed for by defendants.

After a verdict for plaintiff, the defendants moved for a new trial for the errors assigned in the charge, and the refusal to give the instructions prayed for, and for the exclusion of the testimony offered by them, and appealed from the judgment for the plaintiff.

*Messrs. E. B. Norvell* and *C. M. Busbee,* for plaintiff.
*Mr. G. S. Ferguson,* for defendants (appellants).

AVERY, J.: If Samuel C. Ferguson was a resident of the State of North Carolina on the 4th of October, 1869, when his land was sold upon a Justice's judgment, rendered on the 11th of August, 1869, and docketed in the Superior Court on the 14th of August, 1869, he was entitled to a homestead, and unless he had a homestead already allotted to him in other

lands, the sale of his interest in the land in controversy, under such execution, was null and void. It was conceded that no other land had been allotted to him. He resided in North Carolina in 1866, and the summons was served on him in the case wherein judgment was rendered, and execution and sale followed in the summer of 1869. We find positive and direct testimony tending to show these facts and nothing more bearing upon the question of his domicile, though it was stated in general terms that there was additional testimony offered for the defendants.

The Court, upon objection, properly excluded the testimony offered that Samuel C. Ferguson was generally reputed in his family, or in the neighborhood in which he lived in 1866, to have removed to and become a resident of the State of Georgia, where he died in August, 1870. Evidence as to the residence of a person falls within the general rule that hearsay testimony is inadmissible, and no sufficient reason can be adduced for making it an exception like testimony as to pedigree. The other evidence upon the same question seems to have been fairly submitted to the jury. It being conceded that Ferguson resided in Cherokee County in 1866, the presumption was that he continued to make this State his home, and the jury were left to determine whether the evidence was sufficient to rebut it, since, in the absence of such proof, the law assumed that his domicile remained unchanged. 5 Am. & Eng. Enc., p. 971; Lawson on Presump. Ev., p. 172, rule 30.

The defendants offered no testimony tending to show that the judgment was recovered upon a debt created prior to 1868, and as we must assume that the sale was made to satisfy an obligation incurred after the ratification of the Constitution, and without allotting homestead, it was void. *Long* v. *Walker*, 105 N. C., 90; *Lloyd* v. *Lloyd*, at this term.

Whether the defendants or those under whom they claim entered upon the land in 1869 or 1870 is not material. If

the execution sale of Samuel's one undivided eighth was invalid, the deed to Brittain, under which they claimed, passed only the seven-eighths of the land which had descended on the death of Robert Ferguson to his other children. The defendants had not been in possession twenty years when this action was brought in 1889, and therefore the presumption had not arisen that the plaintiff as a co-tenant had been evicted. *Caldwell* v. *Neely*, 81 N. C., 114; *Ward* v. *Farmer*, 92 N. C., 93. The cases of *McCulloh* v. *Daniel*, 102 N. C., 529, and *Amis* v. *Stevens*, 111 N. C., 172, which were relied on by defendants' counsel to sustain his position, were carefully distinguished by the Court in both opinions from those already cited in support of the view of the question which we have taken. The distinction was that in the one case the occupant entered and held under title derived mediately or immediately through conveyances from a portion of the tenants in common, to whom the land had passed by descent or purchase, while in the other he had bought at Sheriff's sale a claim purporting to be adverse to all of such tenants, and had entered and held adversely for more than seven years.

The deed of Thomas M. Ferguson and others to Brittain, though it purported to convey all of the interest in the land, had only the effect of putting Brittain in the relation to Samuel Ferguson previously occupied by his grantors. Thomas C. Ferguson, after procuring a conveyance from King for such interest as had passed to him by the Sheriff's void deed, joined the heirs of Robert Ferguson in conveying to Brittain. As to the individual interest of Samuel Ferguson, Thomas Ferguson and Brittain stood in the same relation to him as had been sustained by King. The occupation and undisturbed enjoyment of the rents and profits by Brittain or those claiming under him for a less time than twenty years, though under a deed purporting to convey the entire estate, did not bar the action of the heirs of Samuel Ferguson, if the

*In re* MEYERS.

sale by the Sheriff was void.   *Breden* v. *McLaurin*, 98 N. C.,
307 ; *Hicks* v. *Bullock*, 96 N. C., 164.   But a case more directly
in point is *Page* v. *Branch*, 97 N. C., 97, where Justice DAVIS,
delivering the opinion of the Court, laid down the principle
that one tenant in common cannot make the possession
adverse to his co-tenant by conveying the entire estate,
because his bargainee only acquires such estate as the bar-
gainor can convey.   We see no reason why the registration
of the deeds from the Sheriff to King, and from the latter to
Thomas Ferguson, should give any additional force or effect
to the subsequent conveyance to Brittain.   There is no prin-
ciple which we can invoke that would give to the registra-
tion at that date, if now, the effect of an ouster.

For the reasons stated we conclude that there was

No Error.